The Full Commission have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except with minor modifications.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing, plaintiff was a thirty-five year old female who had been employed with defendant-employer as the accounts receivable manager at their office in Matthews, North Carolina. Defendant-employer had three or more employees during the course of plaintiff's employment from September of 1995 through August 30, 1996.
2. Plaintiff was paid an average weekly wage of $508.00 during the course of her employment.
3. On or about May 7, 1990, defendant-National Petroleum Packers Incorporated became incorporated under the laws of the State of Florida. On December 29, 1993, they filed an Application for Certificate of Authority with the North Carolina Department of the Secretary of State on which they listed the principal office as 3501 Gribble Road, Matthews, North Carolina, 28105. F. Lee Weaver was listed as the registered agent for the corporation. The application further listed corporate officers:
 Hanna Batihk as President and Renee Boulos as Secretary/Treasurer, with the Gribble Road address as the Business Address for each. On May 20, 1996, the Certificate of Authority was revoked.
4. In the corporate annual report filed on December 3, 1996, the corporate officers were listed as Salim Boulos, President; Joseph Boulos, Secretary/Treasurer; and Chehade M. Boulos, Chairman of the Board. The Business Address for these principal officers was the Gribble Road address in Matthews.
5. On August 30, 1996, plaintiff reported to work at 8:30 a.m. After she was unable to open the back door to enter the office, she walked down the cement steps toward the bay doors. At the bottom step, plaintiff slipped and fell backwards, striking her back on the cement step. Plaintiff was initially stunned by the fall and after she recovered, she got up and returned to her car to await the arrival of a coworker.
6. Dishun Cutherson, a coworker, arrived about five minutes later. She suggested that plaintiff go home and call Joe Boulos or Salim Boulos when they came in to the office later that morning.
7. Plaintiff called Joe Boulos at the office approximately 11:00 a.m. and advised him of her accident. Mr. Boulos recommended that plaintiff go to Presbyterian Hospital in Matthews for medical treatment.
8. Plaintiff was evaluated on August 30, 1996 at Presbyterian Hospital for the back strain and was given work restrictions of light duty work for four days.
9. Joe Boulos made an appointment for plaintiff to receive follow-up treatment at Monroe Urgent Care on September 5, 1996. Additional medication, therapy and bed rest were ordered. However, by October 7, 1996, plaintiff had begun to experience radiating pain.
10. On October 30, 1996, Dr. John A. Welshofer of Miller Orthopedic Clinic saw plaintiff for complaints of back pain and pain radiating down the right leg and to the right great toe. After reviewing diagnostic studies and conducting a physical examination, Dr. Welshofer diagnosed plaintiff with possible L5 radiculopathy. He restricted her to no lifting over ten pounds, no frequent bending and no standing over an hour. Dr. Welshofer also ordered an epidural for plaintiff. After plaintiff continued to have pain, additional studies were ordered.
11. While plaintiff was out of work on light duty restrictions, defendant-employer terminated her employment.
12. On August 8, 1997, Dr. Craig Brigham performed a right L5-S1 micro-foraminotomy on plaintiff.
13. As a result of the fall at work, plaintiff was temporarily totally disabled from earning wages in her employment from on or about the date of the injury until she secured other employment on November 20, 1997. During a portion of 1996 and 1997, plaintiff received unemployment compensation in the amount of $5,733.00.
14. Upon her return to gainful employment, plaintiff earned a weekly wage of $402.00 for the period from November 20, 1997 through March 31, 1998. Plaintiff earned $420.00 per week for the period from April 1, 1998 through September 1, 1998. She has earned a weekly wage equal to or greater than her pre-injury wage since September 2, 1998.
15. Defendant-employer failed to file an I.C. Form 19 within five days of notice of plaintiff's accident.
16. Defendant-employer failed to respond to plaintiff's I.C. Form 18, which was filed on September 25, 1996.
17. Defendant-employer failed to file an I.C. Form 33R, Response to Request for Hearing, within 45 days of March 10, 2000, when plaintiff's counsel served copies of the Form 33 via regular mail on the defendant-employer. After no reply was received, plaintiff's counsel served copies of the Form 33 on June 1, 2000 via certified mail on the corporate officers. No reply was received from the corporate officers either.
18. Notice of the deputy commissioner hearing was mailed to defendant-employer on or about September 5, 2000, via regular mail. However, defendants failed to appear or raise an objection to appearing at the October 3, 2000 hearing with Deputy Commissioner Dollar.
19. On November 9, 2000, plaintiff returned to Dr. Brigham for an evaluation of her condition. Dr. Brigham found that plaintiff retained a five percent permanent partial impairment to her back as a result of the compensable injury and the resultant back surgery.
20. The corporation's charter was revoked at the time of the accident and was no longer in existence; therefore, the individual defendants were not protected by a corporate veil and are personally liable for payments under the Workers' Compensation Act.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On or about September 30, 1996, defendants operated a company, which regularly employed three or more employees, one of whom was plaintiff. Accordingly, the parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act. N.C. GEN. STAT. § 97-2(1), (2), and (3).
2. Plaintiff sustained an injury by accident arising out of and in the course of the employment on August 30, 1996. N.C. GEN. STAT. §97-2(6).
3. Plaintiff's average weekly wage was $508.00, which yields a compensation rate of $338.68 per week. N.C. GEN. STAT. § 97-2(5).
4. Each individual defendant with the authority to obtain workers compensation insurance and bring the company into compliance with the Workers' Compensation Act can be held liable for up to one hundred percent of the plaintiff's claim. N.C. GEN. STAT. § 97-94.
4. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $338.68 per week for the period from August 30, 1996 through November 19, 1997. N.C. GEN. STAT. § 97-29.
5. As a result of the compensable injury, plaintiff is entitled to temporary partial disability compensation at the rate of two-thirds of the difference between her pre-injury average weekly wage and post-injury wage for the period from November 20, 1997 through September 1, 1998. N.C. GEN. STAT. § 97-30.
6. Plaintiff is entitled to permanent partial disability compensation at the rate of $338.68 per week for fifteen weeks as a result of the five percent rating to her back. N.C. GEN. STAT. § 97-31(23).
7. Plaintiff is entitled to have defendants pay for medical expenses incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. GEN. STAT. § 97-2(19).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation in a lump sum to plaintiff at the rate of $338.68 per week for the period from August 30, 1996 through November 19, 1997.
2. Defendants shall pay to plaintiff temporary partial disability compensation in a lump sum at the rate of two-thirds of the difference between her pre-injury wage and her post-injury wage for the period from November 20, 1997 through September 1, 1998.
3. Defendants shall pay to plaintiff permanent partial disability compensation in a lump sum at the rate of $338.68 per week for fifteen weeks as a result of the five percent rating to the back.
4. A reasonable attorneys fee of twenty-five percent of the compensation awarded to plaintiff in paragraphs 1, 2 and 3 above is hereby approved to be paid directly to counsel by defendants.
5. Defendants shall pay medical expenses incurred when bills for the same have been approved, in accordance with the provisions of the Act.
6. Defendants shall pay the costs due the Commission.
 ***********
IT IS FURTHER ORDERED that
1. Pursuant to N.C. GEN. STAT. § 97-92(e), defendants shall pay a fine of $25.00 to the Industrial Commission for failure to file an I.C. Form 19.
2. Pursuant to I.C. Rule 802, defendants are sanctioned for failure to properly acknowledge plaintiff's claim in accordance with N.C. GEN. STAT. § 97-18, I.C. Rule 601, and I.C. Rule 501. As appropriate sanction for this violation, defendants shall be liable for plaintiff's reasonable attorneys fees.
3. Pursuant to I.C. Rules 603 and 802, defendants shall pay a fine of $100.00 for failure to file an I.C. Form 33R.
 ***********
IT IS FURTHER ORDERED that this case be RESET on the active hearing docket in Mecklenburg County and be REFERRED to the Office of the Attorney General for a determination of the penalties and sanctions as may be imposed as a result of defendants' failure to maintain workers compensation insurance.
This ___ day of ___ 2001.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER